ATLAS COMMERCIAL COMPANY, PLAINTIFF AND APPELLEE, V.
GÓMEZ ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Guayama in an Action
of Debt.

No. 1613.—Decided November 30, 1917.

CONTRACT—PURCHASE AND SALE—MERCANTILE COMMISSION ACCOUNT—UNLIQUI-
DATED CURRENT ACCOUNT.—The argument in this case proceeds on the theory
that the action was brought upon a mercantile commission contract and an
unliquidated current account. *Held:* That the lower court properly construed
the contract as one of purchase and sale, although in certain aspects and to
a clearly defined extent it seems to involve an element of agency and com-
mission, and that whatever doubt might have existed as to the meaning of
the original instrument was removed by the practical interpretation placed
on the same by the parties through their conduct.

The facts are stated in the opinion.

*Mr. Manuel A. Martínez* for the appellants.

*Mr. Gustavo Rodríguez* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff-appellee, hereinafter referred to as plaintiff, on
appeal from the municipal court, after a trial *de novo*, re-
covered judgment in the district court against defendant-
appellants, hereinafter designated as defendants, upon an
account opened after the execution of a contract between
plaintiff, as party of the first part, and defendants, as parties
of the second part, the pertinent portion of which reads as
follows:

"That they have entered into a contract of purchase and sale
of Firestone automobile tires and tubes, the parties of the second
part to engage in retailing the same within the district of Guayama,
which they hereby reduce to writing as set forth in the following
clauses:

"*First.*—Ricardo A. Gómez and Arturo Gervasio López-Giraud
bind themselves to buy from the 'Atlas Line' Company Firestone
tires and tubes to the amount of two thousand dollars during the
period of one year from this date, which is the term of this contract.

"*Second.*—If during the first quarter the parties of the second
part sell tires and tubes to the amount of one thousand dollars, they

bind themselves to increase the amount of their purchases from the 'Atlas Line' to the sum of three thousand dollars.

"*Third.*—It is expressly agreed that the 'Atlas Line' will allow to the parties of the second part, a successive discount of 10 and of 2½ per cent on every purchase if not less than five hundred dollars; the merchandise sold in this event to be delivered at the port of Arroyo, *C. I. F.;* that is to say, freight and insurance to be charged to the account of the 'Atlas Line.'

"*Fourth.*—In case the purchases should not amount to the sum of five hundred dollars, the goods purchased shall be delivered at the offices in San Juan or Ponce, and in this event the freight and insurance will be charged to the parties of the second part; provided that while cars of the 'Atlas Line' continue to run by way of Guayama between San Juan and Ponce, the goods will be transported gratuitously by the cars of said line; it being understood that in case of these purchases for amounts less than $500, the parties of the second part shall be entitled to a commission of 10 per cent on the list price for consumers.

"*Fifth.*—It is stipulated that the towns of the district of Guayama included within the business here established are the following: Guayama, Arroyo, Salinas, Santa Isabel, Cayey, Aibonito, Barranquitas, Cidra and Patillas; it being agreed that all goods embraced in this contract that the 'Atlas Line' may sell in said towns shall not be sold at other than the retail price, it being the duty of the 'Atlas Line' to credit on the account of the parties of the second part the difference between such prices and those privately agreed upon between the parties hereto; it being understood that this clause shall not apply to any case where the sale is made directly out of the said district.

"*Sixth.*—Sales that the 'Atlas Line' Company may make to the Central Aguirre Company, to Robert S. Prescott and to the Irrigation District of Porto Rico are excluded from this contract in so far as the 10 per cent commission herein agreed upon is concerned.

"*Seventh.*—The 'Atlas Line' guarantees the tires herein referred to for 3,500 miles; * * * it being further stipulated that said parties of the second part, during the period of this contract and of its extension, if any, shall not sell any other than Firestone tires and tubes.

"*Eighth.*—The parties of the second part shall keep always a stock of tires and tubes of not less than one thousand dollars; said parties binding themselves to pay for every additional order and

the sales included within the total amount of stock, within the absolute period of thirty days; it being understood that the amount of the stock provided for herein shall be subject to the contingency that the 'Atlas Line' shall have enough goods on hand to cover the sales that the parties of the second part may make.

"*Ninth.*—The parties of the second part bind themselves to keep insured against fire the stock contained in their place of business in amount sufficient to cover the value of the goods on hand forwarded by the 'Atlas Line,' to which effect they shall endorse in favor of the said company the corresponding policy.

"*Tenth.*—It is expressly agreed that if the parties of the second part should form a partnership, the rights arising from this contract shall be extended to the partnership so formed; it being further stipulated that in any event every tire sent by the 'Atlas Line' that may remain in the shop of the parties of the second part or of the partnership that they may form for a period of three months, shall be considered as sold."

But two errors are assigned: (A) That the judgment is contrary to the evidence and (B) that the judgment is contrary to law.

The argument under both assignments proceeds on the theory of a "mercantile commission contract" and of an unliquidated current account.

We think the court properly construed the contract as one of purchase and sale, although in certain aspects, and to a clearly defined extent, it seems to involve an element of agency and commission. But whatever doubt might have existed as to the meaning of the original instrument is removed by the practical interpretation placed on the same by the parties through their conduct. *Gile* v. *Interstate Motor Car Co.,* 54 L. R. A. (N. S.), 1915 B., 109 and note.

The account covers a period extending from June 12, 1913, to April 2, 1914, and shows a total indebtedness of $4,482.57, with credits amounting to $3,989.46, leaving a balance due of $493.11, for which judgment was rendered.

Bills accompanied all invoices and were followed by general statements. Also, on January 3, 1914, defendants requested, and on January 6 were furnished with, a full itemized state-

ment, to which no objection was made until after defendants were notified, on March 6, that further delay would not be tolerated and that settlement must be made within the week ending March 14. On the last day of the period thus fixed defendants raised some question as to a tire or two and again asked for an itemized account in order to verify the alleged discrepancy, and for further indulgence as to time.

This theory of an unliquidated account based solely and exclusively upon the vague suggestion of a possible discrepancy last above mentioned, made practically at the threshold of the court-room to which defendants were about to be summoned, and after a tacit acknowledgment of the debt contained in numerous letters covering a period of several months, making small payments thereon, earnest excuses and many promises, without mention of any disputed item, is entirely too tenuous for serious consideration.

The judgment appealed from must be

*Affirmed.*

Justices Wolf and del Toro concurred.
Chief Justice Hernández and Justice Aldrey absent.